**SIGNED this 18th day of October, 2006.**

_____
**FRANK R. MONROE
UNITED STATES BANKRUPTCY JUDGE**

_____

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| IN RE: | X | CASE NO. 06-10091-FRM |
| WILLIS A. SADLER | X | |
| | X | |
| ALLEGED DEBTOR | X | CHAPTER 11 |

MEMORANDUM OPINION

This Court held a hearing on July 26, 2006 on the Alleged Debtor's Motion to Dismiss this Involuntary Proceeding. This Court has jurisdiction under 28 U.S.C. §1334(a), (b) and (d), 28 U.S.C. §151, 28 U.S.C. §157(a) and (b)(1) and the Standing Order of Reference in this District. This is a core proceeding under 28 U.S.C. §157(b)(2)(A) as this is a determination as to whether the petitioning creditor's involuntary petition should be dismissed. It is therefore a proceeding arising under Title 11. This Memorandum Opinion shall constitute Findings of Fact and Conclusions of Law as required by Bankruptcy Rule 7052 which is made applicable to contested matters under

Bankruptcy Rule 9014.

## Background Facts

The Cadle Company filed its involuntary petition against Willis Sadler on January 30, 2006. Mr. Sadler filed a response to this petition and a Motion to Dismiss. Mr. Sadler claims that 1) The Cadle Company is ineligible to file the petition as he has more than eleven (11) creditors thus requiring at least three (3) petitioning creditors to file the involuntary petition; 2) he was not "not generally paying his debts as they became due" and 3) he could not be a "debtor" as defined in the Bankruptcy Code as he had not complied with the pre-filing credit counseling obligations required under 11 U.S.C. §109(h). Mr. Sadler filed an Amended Affidavit on June 5, 2006 listing 24 creditors and that he was generally paying his debts and that he had not complied with §109(h). At the conclusion of the hearing, the Court made certain findings of fact and conclusions of law with respect to several matters.

The Court determined that §109(h) which requires pre-petition debt counseling prior to filing bankruptcy by a debtor did not apply to involuntary petitions filed by petitioning creditors pursuant to 11 U.S.C. §303. Section 109(h) states:

> Subject to Paragraphs 2 and 3, and notwithstanding any other provisions of this section, an individual may not be a debtor under this title unless such individual has during the 180 day period preceding the date of the filing of the petition <u>by such individual</u> received from an approved nonprofit budget and credit counseling agency . . .an individual or group briefing. . . that outlined the opportunities for available credit counseling and assisted such individual in performing a related budget analysis.

11 U.S.C. §109(h)(West 2006)(Emphasis added). The Court determined that the plain meaning of "by such individual" meant §109(h) only applied in situations where the debtor files the bankruptcy petition.

Second, the Court determined that Mr. Sadler is "not generally paying his debts" within the meaning of §303 as well over 99% in amount of his creditors are not being paid. These creditors are The Cadle Company, First Financial, Pearson Plumbing and the Internal Revenue Service.

Third, the Court determined that the following debts were not bonafide creditors for purposes of §303(b):

1. Parker County Appraisal District–Mr. Sadler's wife's obligation on her separate property.

2. Capital One–Debt in name of Winchester Ranch Properties, L.L.C.'s and no proof Mr. Sadler personally liable on the debt.

3. City of Austin– Small recurring bill contracted to be paid monthly and on demand.[1]

4. SBC– Small recurring bill contracted to be paid monthly and on demand.

5. Sprint/Nextel– Small recurring bill contracted to be paid monthly and on demand.

6. Texas Gas–Small recurring bill contracted to be paid monthly and on demand.

7. Progressive–Insurance paid monthly.

8. Stonington Lloyd's–Insurance paid monthly.

9. Time Warner–Small recurring bill contracted to be paid monthly and on demand.

10. T-Mobile—Small recurring bill contracted to be paid monthly and on demand.

11. Asset Acceptance–Debt cannot be collected because it is time barred.

The Court determined the following entities were bonafide creditors for purposes of §303(b):

1. Chrysler–Automobile payment

2. Greentree–Trailer payment

---

[1] See *Denham v. Shellman Grain Elevator, Inc.* 444 F.2d 1375 (5th Cir. 1971)(small, recurring bills contracted to be paid monthly and on demand, such as claims for rent, groceries and utilities, are excluded from the creditor count and cannot be used by the alleged debtor to increase the number of creditors to greater than 12 in order to defeat the involuntary petition.)

    3. Homecoming Financial–Mortgage payment

    4. Bank of America–Credit card

    5. Dillard's–Credit card

    6. Neiman Marcus–Credit card

    7. Texaco/Shell-gas Credit card

    8. The Cadle Company–Judgment

    9. Pearson Plumbing–Judgment

    10. Kent Altaras, CPA–Ongoing balance owed on accounting services

The Court could not determine at the hearing whether the Internal Revenue Service [taxes], First Financial Resolution [judgment] and Latham and Company [loan] qualified as creditors under §303(b) and requested additional briefing from the parties.

As of the date of the petition, Mr. Sadler owed the Internal Revenue Service an undetermined amount. The returns for 2003-2005 allegedly evidencing this debt had not been filed as of the petition date and had still not been filed as of the date of Mr. Sadler's deposition on May 2, 2006. Since that time the 2003 and 2004 have allegedly been filed. Mr. Sadler testified, however, that he did not receive the 2003 and 2004 returns until the night before this hearing. Further, Mr. Sadler did not provide any evidence of assessment by the Internal Revenue Service. The Court therefore had some concern as to whether the allegedly filed returns (at least one return has not even been prepared) create debts that would satisfy §303(b).

Mr. Sadler provided no documentation with respect to First Financial Resolution other than his Amended Affidavit which indicates it is a judgment of $156,000. There is no contact address provided as required by Bankruptcy Rule 3001(b). We have only the testimony of Mr. Sadler

indicating that this is a judgment on a real estate lien note purchased by First Financial. Mr. Sadler did not even provide a copy of the judgment or any demand letters from First Financial. Jerry Drake Sr., a representative of The Cadle Company, testified that information regarding First Financial was requested from Mr. Sadler many times. In fact, The Cadle Company underwent significant pretrial discovery to determine the validity of this debt, but could not locate any information. There also have been no attempts by Mr. Sadler to repay this claim. The Court believes that Mr. Sadler's evidence with respect to this debt may be insufficient to meet his burden of proof.

Last is the debt owed to Latham and Company ("Latham"). This debt is a loan made to the Sadlers to pay off a previous judgment owed to Indymac. Mr. Sadler's wife is a director of Latham and his brother-in-law is a director and president. The loan is not a loan that would be made in the marketplace as it is an unsecured loan to be repaid from proceeds of the sale of a homestead when and if it sells. There is an executed promissory note evidencing this debt; however, The Cadle Company argues that this debt is actually a debt owed to an insider and cannot qualify as a debt for purposes of §303(b).

The Court took the matter under advisement and requested additional briefing with respect to these three debts. Specifically, the Court requested briefing on the burden of proof under §303 as well as whether the three remaining debts should be counted as creditors for purposes of §303(b).

<u>Issues Presented?</u>

1) Who has the burden of proof under §303 to prove there are fewer than 12 holders of claims against the Alleged Debtor that are not contingent as to liability or the subject of a bona fide dispute?

2) Should the Internal Revenue Service, First Financial Resolution and/or Latham and Company be counted as holders of claims for purposes of §303(b)(2)?

Conclusions of Law

11 U.S.C. §303 authorizes the filing of an involuntary petition under Chapter 7 or 11 against a debtor in certain circumstances. Section 303(b)(1) requires three or more qualified creditors to join in the filing of the petition in a situation where the debtor has 12 or more creditors. On the other hand, §303(b)(2) permits a single qualified creditor to file the petition in a situation where the debtor has fewer than 12 creditors. The Court has determined that Mr. Sadler has ten viable creditors for §303 but has questioned whether at least two of the three remaining creditors qualify so as to require dismissal of this proceeding.

1) Burden of Proof

Mr. Sadler bears the initial burden of proving that he has 12 or more creditors. *In re Rothery,* 143 F.3d 546, 549(9th Cir. 1998). Bankruptcy Rule 1003(b) instructs that a debtor, who professes to have more than 12 creditors, must file an answer, including a list of all creditors with their names and addresses, a brief statement of the nature of the claims and the amounts thereof. Once the debtor files his list of creditors in compliance with Bankruptcy Rule 1003(b), the petitioner has the burden of showing that the debtor has less than 12 bonafide creditors. *In re Braten,* 99 B.R. 579, 582 (Bankr. S.D.N.Y. 1989); see also *In re James Plaza Joint Venture,* 67 B.R. 445, 448 (Bankr. S.D. Tex. 1986). Compliance with Bankrutpcy Rule 1003(b) is a condition precedent to the burden shifting to the petitioning creditor. The Court will review the three remaining creditors taking into consideration this burden.

2) Remaining Creditors

    A) First Financial

First Financial should be excluded from Mr. Sadler's list of creditors. First, Mr. Sadler, in

6

his answer and affidavit, failed to comply with Bankruptcy Rule 1003(b) by not providing The Cadle Company with the requisite information. He failed to submit the address of the alleged creditor. As a result, The Cadle Company was unable to locate and/or verify the existence of the alleged judgment. And, at trial no evidence other than Mr. Sadler's testimony was introduced regarding the existence of this debt.

Whether a debtor actually has twelve or more creditors cannot be answered in the debtor's favor unless proof of the existence of the creditor is forthcoming. This requires, at a minimum, that a debtor, provide a list of all creditors with their names and addresses, a brief statement of the nature of the claims and the amounts thereof. The petitioning creditor must have this information in order to determine the accuracy of the list of creditors and/or as a means to get other creditors to join in the petition. *In re Alta Title Company,* 55 B.R. 133 (Bankr. D.Utah 1985).

Sadler's Amended Affidavit provides:

First Financial; $156,000; Judgment.

This statement is inadequate and incomplete. No address is provided, and there is no indication as to when and/or where the judgment was taken. There is no way to verify the statement and The Cadle Company has been unable to determine the viability of the claim. Sadler did not provide such information or produce any documents regarding this claim. The burden to disprove First Financial as a creditor never shifted to The Cadle Company because Mr. Sadler never provided sufficient evidence that First Financial is actually a creditor.

Further, prior to the filing of the involuntary, The Cadle Company conducted its own investigation as to all possible creditors of Mr. Sadler and was unable to locate any judgment held by First Financial, although others were found. Jerry Drake, Sr. of The Cadle Company ran a credit

report, did a Westlaw search and conducted post-judgment discovery; however a claim owing by Mr. Sadler to First Financial never appeared.

Mr. Sadler himself stated in his deposition that he supposes First Financial has a judgment against him, but he is not sure whether he has ever seen the judgment. Sadler declared that he believes First Financial is a creditor based on a title commitment issued by a title company. Accordingly, he claims to have sent a letter to First Financial requesting information regarding the claim and requesting that they release an abstract of judgment filed on his wife's property in Weatherford, Texas. However, when asked to produce the letter and/or the title report, Sadler did not. Sadler has failed to produce sufficient evidence regarding this alleged claim.

Further, Mr. Sadler's deposition indicates that he may actually dispute the judgment of First Financial. The Cadle Company, Exhibit 16, Sadler Dep. 114:8-9, 114:10, 34: 14-18 and 34:19-24, May 2, 2006. The statements made by Sadler demonstrate that he disputes the amount of First Financial's claim if one even actually exists. If First Financial were to come forward with a claim against Sadler, he would dispute the amount of the claim, thereby preventing it from being a petitioning creditor. On the other hand, as long as First Financial does not come forward to join in the petition, he does not dispute the amount of the indebtedness so as to include them in his creditor count.

Sadler's non-compliance with Bankruptcy Rule 1003(b), his repeated failure to produce any information regarding the $156,000 judgment, his contention that the claim is disputed along with the lack of any evidence in the record other than his self serving testimony that he cannot locate any documents precludes the inclusion of First Financial on Sadler's list of creditors.

B) <u>Latham & Company</u>

The term "insider" is defined by the Bankruptcy Code. 11 U.S.C. §101(31)(West 2006). This section does not provide an exclusive list as to those who are considered insiders. The term is open-ended and not susceptible to precise specification. *In re Acme-Dunham, Inc.* 50 B.R. 734, 739 (D.Me. 1985). The definition of "insider" provides eighteen possible relationships that qualify. The term begins with the phrase "'insider' includes." 11 U.S.C. §101(31)(West 2006). The use of the word "includes" confesses that the definition is not limited. *See*, 11 U.S.C. §102(3)(West 2006) which provides that "includes" and "including" are not limiting. As such, other relationships can qualify. *In re Schumann,* 81 B.R. 583, 586 (9th Cir. 1987).

The legislative history surrounding the enactment of the Bankruptcy Code of 1978 provides the following explanation regarding the definition of the term "insider:"[2] "An insider is one who has a sufficiently close relationship with the debtor that his conduct is made subject to closer scrutiny than those dealing at arms length with the debtor."[3] In determining whether an insider relationship exists, many courts have relied on this legislative history and applied it to include a broad range of parties who are in some sort of "close relationship with the debtor," but who are not specifically listed in 11 U.S.C. §101(31). *In re Missionary Baptist Found. Of Am., Inc.,* 712 F.2d. 206, 209-11 (5th Cir. 1983)(holding general partner and director to be insider relationship); *In re Krehl*, 86 F.3d 737, 741 (7th Cir. 1996)(resigned corporate officer and director was an insider of corporation); *In re Emerson*, 235 B.R. 702, 7-6-707 (Bankr. D.N.H. 1999)("good friends" had an insider relationship);

---

[2] Pub. L. No. 95-598, 92 Stat. 2549(1978)

[3] H.R. NO. 95-595, at 312 (1977); S.REP. NO. 95-989, at 25 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5810, 6269.

9

*In re Ingleside Assocs.,* 136 B.R. 955, 961 (Bankr. E.D. Pa. 1992); *In re Sky Valley, Inc.,* 135 B.R. 925, 934 (Bankr. N.D. Ga. 1992)(advisor of debtor was an insider).

The Fifth Circuit has held that a "close friendship" satisfies the "close relationship" standard. *In re Holloway,* 955 F.2d 1008, 1011 (5th Cir. 1992); *Schumann*, 81 B.R. at 586. Additionally, a transaction cannot be conducted at "arms length" if the debtor was insolvent at the time the loan was made, or if the loan was not commercially motivated. *Holloway*, 955 F.2d at 1012 (holding that insider knew or should have known debtor was insolvent at the time she made the loan and this would not be the sort of loan someone at arms length would agree to).

Mr. Sadler claims that the effect of this loan was to reduce a debt owed by Mr. Sadler from $3 million to $65,000. Further, he claims that insider status not only bears on the closeness of the relationship but the degree to which the entity is able to exert control over the debtor. Here Mr. Sadler asserts there was no evidence of control by Latham & Company over Mr. Sadler or his wife and not any evidence that Mr. Sadler is involved in the affairs of Latham and Company or vice versa. There was no evidence that Mr. Sadler had any ability to control his brother-in-law or that Latham & Company controlled Mr. Sadler.

However, what Mr. Sadler is missing is that no commercial lender would make this type unsecured loan and it was only because of the relationship between principals of Latham & Company and the Sadlers, the loan was made.

It is apparent the loan was not commercially motivated. Mr. Sadler's brother-in-law is a member of the board of directors and is President of Latham & Company. Mrs. Sadler, the alleged debtor's wife, is a director. The loan is to be repaid by May 1, 2006 or upon the sale of Mrs. Sadler's homestead if and when it sells. The transaction cannot be considered one that was

conducted at arms length because no "arms length" lender would make such a loan, since no enforceable lien could be taken against the homestead and Mr. Sadler is clearly insolvent. Latham & Company is an insider pursuant to 11 U.S.C. §101(31) and cannot be considered a creditor of Mr. Sadler for purposes of §303(b).

    C)   <u>Internal Revenue Service</u>

Sadler asserts also that the IRS is a creditor holding a claim against him in the amount of $25,000. Sadler maintains that the IRS claim is neither contingent as to liability nor disputed as to liability or amount and that it should be included in the list of twelve creditors. Sadler acknowledged this debt through his Amended Affidavit; however, he did not list which tax year(s) created such debt. In his testimony Mr. Sadler stated that he had not prepared his returns to be in a position to know the exact amount due at the time he filed this Affidavit. He stated that he will owe taxes and that he estimated his liability to be $25,000. Sadler asserts that it is The Cadle Company's burden to introduce evidence to show that the IRS claim was "subject to dispute" as to either liability or amount. The Court does not believe this to be the case. Saying a debt is a debt does not necessarily make it so. Otherwise, alleged debtors can list any debt and say its owed shifting the burden to the petitioning creditor to prove it is not. Something more is necessary.

Here, Sadler does not list the tax years for which the IRS claim is owed. Nor does he provide sufficient other information to verify the existence or amount of the claim. Sadler failed to introduce any evidence to actually support the existence or amount owed to the IRS. Sadler did not provide any documentary evidence supporting this claim. He did not provide any paperwork reflecting his calculations nor any information from his accountant on this matter.

In his deposition of May 2, 2006 Sadler testified that the IRS claim was based upon taxes for 2003, 2004 and 2005, but that he had not yet filed any returns for those years that would verify the existence or amount of this debt. The Cadle Company, Exhibit 16, 35-36:18-23. Sadler went on to explain that the reason the returns had not been filed was because "there's a potential that I have a dispute that's out there." The Cadle Company, Exhibit 16, 35:23-24. His attorney then clarified Sadler's statement by providing "well, he's saying that "they're in dispute. I meant the exact amounts I think are what he's talking about." The Cadle Company, Exhibit 16, 36-16-18. These statements show that the IRS purported claim was disputed, at least to the amount as of the petition date.

However, notwithstanding that this claim could be subject to a bonafide dispute, Sadler could not even verify any liability to the IRS. At the hearing Sadler testified that he filed his 2003 and 2004 tax returns after his deposition in May, 2006 and that he had received a refund for 2004. Sadler, however, did not produce these returns to The Cadle Company during discovery nor even bring copies to the hearing to substantiate that a debt was owed.

Sadler's delayed filing of tax returns, his failure to produce such returns at the hearing and his failure to produce any other evidence to substantiate the basis for this claim, makes it impossible to determine with any certainty whether Sadler owed the IRS anything on the petition date and if so what amount was actually owed. The IRS claim cannot be counted for purposes of this petition.

## Conclusion

The claims of First Financial, Latham & Company and the Internal Revenue cannot be counted for purposes of this involuntary proceeding. An Order Denying Mr. Sadler's Motion to Dismiss will be entered of even date herewith along with an Order for Relief under Chapter 7 of the

Bankruptcy Code.

###